UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD FIRE INSURANCE
COMPANY,

              **Plaintiff,**                            **Hon. Gerald E. Rosen**

**vs.**                                             **No. 11-14110**

ABC PAVING COMPANY, et al.,

              **Defendants.**
_____/

## OPINION AND ORDER REGARDING HARTFORD'S AND DEFENDANT DONNA MORRISON'S MOTIONS FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This is an action for breach of contract damages and to compel Defendants'

specific performance of a general indemnity agreement.  Plaintiff Hartford Fire Insurance

Company ("Hartford") has moved for entry of summary judgment against all of the

Defendants, and Defendant Donna Morrison, individually, has cross-moved for summary

judgment.[1] Having reviewed the parties' motions and supporting briefs and

accompanying exhibits, the Court has determined that the relevant allegations, facts, and

legal arguments are adequately presented in these written submissions, and that oral

argument would not aid the decisional process.  Accordingly, the Court will decide the

---

[1] The other defendants have not moved for summary judgment nor have they filed any
responses to, or otherwise opposed, Hartford's motion.

parties' motions "on the briefs."  *See* Eastern District of Michigan Local Rule 7.1(f)(2).

This Opinion and Order sets forth the Court's ruling.

## II.  <u>PERTINENT FACTS</u>

Defendants ABC Paving Company, ABC Asphalt Paving Company, Inc., and

Michigan Road Maintenance Company, LLC (collectively "ABC") are Michigan-based

construction companies that performed work on numerous public construction projects in

the State of Michigan. Defendant Thomas Morrison is the owner and president of ABC.

Donna Morrison is Thomas Morrison's wife.

Because Michigan law requires that public construction projects be bonded, ABC

sought, and obtained, payment and performance bonds from Plaintiff Hartford Fire

Insurance Company. As a condition to issuing the bonds, ABC, Thomas Morrison and

Donna Morrison, were required to execute a General Indemnity Agreement (the "GIA"),

agreeing to indemnify and hold Hartford harmless from, among other things, all potential

liability resulting from having furnished the bonds, as well as to place sufficient collateral

with Hartford to cover any potential liability.  [*See* Plaintiff's Ex. 1].

Thomas Morrison signed the GIA, in his representative capacity on behalf of ABC

and also in his personal and individual capacity.  *See id.* The GIA also contains the

purported signature of Donna Morrison in her individual capacity.  *Id.*  Mr. and Mrs.

Morrison's signatures were notarized by Sheryl Brown, a public notary employed by

ABC.  The date of the notarization on the GIA is listed as February 20, 2010, and the

place of notarization is listed as Wayne County, MI. *Id.*

ABC defaulted on the bonded projects and on its obligations to subcontractors and suppliers on the projects, and thereafter ABC, Thomas Morrison and Donna Morrison breached the terms of the GIA by not indemnifying Hartford or providing it with collateral to secure Hartford's exposure to liability on the bonds.  Hartford claims a loss of $1,388,578.00 as the result of the bonds and argues that Defendants are jointly and severally liable for the loss.

Mrs. Morrison, however, disputes her liability claiming that she did not sign the GIA, and that the signature of "Donna B. Morrison" on the GIA, (the "Signature") is a forgery.  [*See* D. Morrison Dep., pp. 13-14, Plaintiff's Rseponse Brief, Ex. 2.]  As support, Mrs. Morrison has filed exhibits purporting to show that the Signature is not genuine. These exhibits include a copy of Mrs. Morrison's credit card statement from February 10, 2010 to March 9, 2010 showing that her credit card was used in Las Vegas on February 20, 2010, the date on which she supposedly signed the GIA before the notary in Michigan. [*See* Defendant's Reply Brief, Ex. A.]  The record also includes a handwriting analysis report from a purported expert witness, Todd Welch. *See* Defendant's  Response Brief, Exhibits A and B. The expert's report concludes that the Signature was probably not written by Mrs. Morrison. *Id.*

Additionally, Mrs. Morrison has provided samples of her signature on her driver's license and on two checks, all written prior to commencement of this suit, which contain visible differences from the Signature on the GIA. [*See*  Defendant's Sur-Reply, Ex. A.] Mrs. Morrison also argues that the deposition of Sheryl Brown shows that she did not

witness her sign the GIA, and that the notarization should, therefore, be invalidated

pursuant to the Michigan Notary Public Act.

Hartford contends that Mrs. Morrison's denial of the authenticity of the Signature

is not worthy of credence.  Hartford further argues that Todd Welch's expert report

should be excluded because Mrs. Morrison did not disclose this expert witness pursuant

to the requirements of Fed. R. Civ. P. 26.   Therefore, Hartford argues there is no just

reason to deny it summary judgment.

### III.  DISCUSSION

### A.    APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule

56[] mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986).  In addition, where a moving party seeks an award of summary

judgment in its favor on a claim or issue as to which it bears the burden of proof at trial,

this party's "showing must be sufficient for the court to hold that no reasonable trier of

fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d

254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). However, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

Further, while the nonmoving party must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed[,]" Fed. R. Civ. P. 56(c)(1), the Court may consider materials on the record not cited by the parties. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "Ultimately a district court must determine whether the record *as a whole* presents a genuine issue of material fact." *United States v. Hodge*, 11-10711, 2011 WL 3472788 (E.D. Mich. Aug. 9, 2011) (unreported) (emphasis added). The Court will apply the foregoing standards in deciding the motions for summary judgment in this case.

**B.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH REGARD TO THE LIABILITY OF ABC OR THOMAS MORRISON FOR BREACH OF CONTRACT**

Under Michigan law, indemnity agreements are construed in the same fashion as other contracts. *Zahn v. Kroger Co. of Michigan*, 483 Mich. 34, 42; 764 N.W. 2d 207 (Mich. 2009). All contracts, including indemnity contracts, should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give a reasonable meaning to all of its provisions. *Id.* at 42 (citing *MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.,* 208 Mich. App. 340, 343, 527 N.W.2d 79 (1995)). When a contract is clear and unambiguous, it is to be construed according to its plain sense and meaning. *Id.* at 42. "The law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 604; 576 N.W. 2d (1997).

In order to recover for breach of contract, a plaintiff must demonstrate that there existed a valid and enforceable contract, the terms of the contract required performance of certain actions, that the defendant breached the contract, and that the plaintiff suffered damages as a result of the breach. *Green Leaf Nursery, Inc., v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D. Mich. 2007). Where performance is due under a contract, nonperformance constitutes a breach. *Woody v. Tanner*, 158 Mich. App. 764, 771-72, 405 N.W.2d 213 (1987).

In this case, the GIA provides that the signing parties -- ABC, Thomas Morrison and Donna Morrison -- are contractually obligated to exonerate, indemnify and hold Hartford harmless for all loses it incurred as a result of having issued the bonds, and

6

contractually obligated to provide collateral to Hartford immediately upon demand to

secure it from exposure to liability on the bonds.

In pertinent part, the GIA includes the following clauses:

5.      Indemnity and Exoneration. The Indemnitors are jointly and severally liable
        to Hartford, and will indemnify and hold Hartford harmless from all loss,
        liability, damages, and expenses, including, but not limited to, court costs,
        interest, attorney's fees, professional fees and consulting fees, which
        Hartford incurs or sustains (1) because of having furnished any Bonds, or
        (2) because of the failure of an Indemnitor to discharge any obligations
        under this Agreement, (3) in enforcing any of the provisions of this
        Agreement, (4) in pursuing the collection of any loss incurred hereunder, or
        (5) in the investigation of any claim submitted under any bond.

                                   * * *

6.      Collateral Security. On Hartford's demand, the Indemnitors shall deposit
        with Hartford an amount Hartford deems necessary to protect itself from all
        losses or expenses as soon as Hartford determines that liability exists or has
        reasonable basis to believe that it may incur liability [. . .].

[GIA ¶¶ 5, 6, Plaintiff's Exhibits 1.]

The provisions set forth in paragraphs 5 and 6 of the GIA are unambiguous and,

therefore, must be construed according to their plain sense and meaning. *Zahn,* 483

Mich. at 42. Applying this standard, it is clear that Plaintiff has shown that the terms of

the contract required prompt payment by Defendants to reimburse Hartford consistent

with their obligations to indemnify it against all claims and losses sustained by it under

the payment and performance bonds.

ABC and the Morrisons materially breached the GIA by failing to indemnify

Hartford in amounts deemed necessary by Hartford to secure it from all exposure to

liability on the Bonds and related losses.  As a result of Defendants' breach, Hartford

claims it has suffered a loss of $1,388,578.00 as the result of issuing the bonds, not

including attorney's fees, consultant fees, and other administrative costs.[2]

Defendants ABC and Thomas Morrison have not opposed Hartford's motion for

entry of summary judgment in its favor.[3]  However, Thomas Morrison admitted in his

deposition that he signed the GIA and verified his signature on the document.  [*See* T.

Morrison Dep., p. 85-86, Plaintiff's Response Brief, Ex. 3.][4]  As Plaintiff has

demonstrated that there did, in fact, exist an enforceable contract requiring certain

performance from Defendants, and that Defendants' failure to perform resulted in

damages to the Plaintiff, pursuant to Fed. R. Civ. P. 56(e)(3), the Court will grant

Plaintiff's Motion for Summary Judgment as to Defendants ABC and Thomas Morrison.

## C. ADMISSIBILITY OF DONNA MORRISON'S EXPERT WITNESS REPORT

[2] This is the amount of loss claimed by Hartford as of October 31, 2012, i.e., the date it filed its Motion for Summary Judgment.

[3] Hartford filed its Motion for Summary Judgment on October 31, 2012.  As set forth in the Scheduling Order entered in this case on March 27, 2012,  this Court requires that the parties abide by the Eastern District of Michigan Local Rule 7.1 with regard to the deadlines for filing response and reply briefs.  As of the date of this Opinion, however, Defendants Thomas Morrison and ABC have not responded to Hartford's Motion, nor have they asked the Court to extend the time allotted for responding.  Therefore, pursuant to Fed. R. Civ. P. 56(3)(2), the Court considers Hartford's Motion to be unopposed by Defendants ABC and Thomas Morrison.

[4] Mr. Morrison also identified his son Brian's signature on the GIA as a witness to Mr. Morrison's execution of the document.   [*See* T. Morrison Dep., pp. 85-86.]  However, whenever asked anything about the signature of "Donna B. Morrison" that appears on the GIA, including whether the signature was that of his wife, Mr. Morrison answered, "I refuse to answer that question based on my Fifth Amendment rights."  *Id.* at 85-86; 94-96.

Donna Morrison, however, has filed a response to Hartford's motion and has filed her own motion for summary judgment disputing her liability under the GIA. In both her own motion and in her response to Hartford's motion for summary judgment, Mrs. Morrison attempts to establish that the Signature of "Donna B. Morrison" on the GIA is a forgery.  As support, Mrs. Morrison introduces the report of an expert witness, Todd Welch.  *See* Defendant's Response Brief, Exhibits A and B.  The report consists of a handwriting analysis comparing samples of Mrs. Morrison's signature to the Signature on the GIA. The report concludes, "it is probable that Donna B. Morrison did not sign the questioned Donna B. Morrison signature on [the GIA]." *Id.* Ex. B  However, Mrs. Morrison did not identify Todd Welch as an expert witness in any of her pretrial disclosures or in her preliminary or final witness list.

Fed. R. Civ. P. 26(a)(2)(D) requires parties to disclose expert witnesses "at the times and in the sequence that the court orders." The Court's March 27, 2012 Scheduling Order set July 20, 2012 as the deadline for the parties to identify their expert witnesses, and a deadline of September 14, 2012 to identify all other (i.e., non-expert) witnesses. Scheduling Order ¶ 3.  Mrs. Morrison's filed a Preliminary Trial Witness List on July 13, 2012, and a Final Trial Witness List on September 14, 2012, but neither list did included Mr. Welch or the names of any other expert witnesses.

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was

substantially justified or is harmless." "[T]he sanction of exclusion is automatic and

mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either

justified or harmless." *Bowe v. Consolidated Rail Corp.*, No. 99-4091, 2000 WL

1434584, at *2 (6th Cir. 2000) (unpublished) (quoting *Finley v. Marathon Oil Co.*, 75

F.3d 1225, 1230 (7th Cir.1996)). "The potentially sanctioned party has the burden to

prove the application of one of these exceptions." *Vaughn v. Homegoods, Inc.*, No. 07-

CV-15085, 2008 WL 4239505, at *3 (E.D. Mich. Sept. 11, 2008) (unreported).

Mrs. Morrison argues that Hartford was made "well aware of the fact that [she]

was going to hire an expert witness" to conduct a handwriting analysis based on  a letter

from her attorney sent to Hartford prior to the July 20, 2012 expert witness list deadline,

and, therefore, she should not be precluded from relying on the report of her expert

witness as support for her summary judgment argument.[5]  However, the correspondence

relied upon by Mrs. Morrison does not satisfy Fed. R. Civ. P. 26(a)(2).

To comply with Rule 26(a)(2), Mrs. Morrison would have had to have disclosed

the identity of the expert witness and have provided a written report meeting the

---

[5] The July 18, 2012 letter relied upon by Defendant reads:

> I sent Requests to Admit concerning my client's claim that she did not sign the
> guaranty in this case. You failed to acknowledge the truth of this statement (that
> she did not sign) and we are now put to the decision to hire a handwriting expert, a
> pricey proposition. We will be looking for reimbursement of the costs of this
> expert providing, or course, he/she agrees with my client's contention. I would
> remind you that we have provided exemplars of my client's handwriting.

[Defendant's Sur-Reply Brief, Ex. D (parenthetical in original).]

specifications of Rule 26(a)(2)(B).  *See* Fed. R. Civ. P (26)(a)(2). No such information

was  disclosed in the July 18, 2012 correspondence; in fact, it was not disclosed until

Mrs. Morrison filed her Response to Plaintiff's Motion for Summary Judgment on

November 21, 2012. Therefore, unless her failure to disclose was "substantially justified

or harmless," the report should be excluded. Fed. R. Civ. P. 37(c)(1).

The burden to prove harmlessness is on the potentially sanctioned party. *Roberts*

*ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F. 3d 776, 783 (6th Cir. 2003). The Sixth

Circuit has generally treated as harmless those failures to disclose which constitute "an

honest mistake on the part of a party, coupled with sufficient knowledge on the part of

the other party." *Sommer v. Davis*, 317 F. 3d 686, 692 (6th Cir. 2003).  With respect to

"sufficient knowledge" concerning an undisclosed witness, the *Roberts* court found that a

failure to disclose a complete educational history was harmless because the opposition

had knowledge of who would testify and to what the witness would testify to. 325 F. 3d

at 783, 84. Where, however, the opposition had no such knowledge, the failure to

disclose has not been held harmless. *See e.g.*, *Ames v. Van Dyne*, No. 95-3376, 1996 WL

662899, at *4-*5 (6th Cir. Nov.13, 1996) (unpublished); 2000 WL 1434584, at *3-*4.

In the instant case, Hartford had no knowledge as to who would testify, or whether

it was certain that any expert would testify at all. The July 18, 2012 letter only advised

Hartford that Mrs. Morrison and her attorney "are now put to the decision to hire a

handwriting expert."  No expert or potential expert was ever identified in the letter.

Furthermore, Hartford had no chance to depose Todd Welch. Where the opposing party

11

has not had an opportunity to depose an expert, it would be prejudiced if the expert's

testimony was used in opposition to its motion for summary judgment. *Borg v. Chase*

*Manhattan Bank USA, N.A.*, 247 F. App'x 627, 636 (6th Cir. 2007) (unpublished).

Accordingly, the Court concludes that Mrs. Morrison's failure to disclose her expert

witness was not harmless.

Nor was Mrs. Morrison's failure to disclose her expert witness justified. Courts

have found that a party's failure to disclose expert witnesses was not justified when the

disclosure came months after the disclosure deadline and only in response to a motion for

summary judgment. *See e.g.*, *Vaughn*, 2008 WL 4239505; *Vance ex rel. Hammons v.*

*United States*, No. 98-5488, 1999 WL 455435 (6th Cir. June 25, 1999) (unpublished).

Indeed, Mrs. Morrison's failure to follow the Scheduling Order "has resulted in the type

of circumstance the discovery rules seek to avoid: new evidence introduced after an

opposing party has filed a motion for summary judgment." *Vaughn,* 2008 WL 4239505 at

*4.

Mrs. Morrison does not directly argue that her failure to disclose her expert was

justified. Rather, she primarily argues that Hartford should not be allowed to argue for the

exclusion of her expert witness "because of its refusal to make good faith answers in

discovery." [Defendant's Sur-Reply Brief, p. 1.]  Specifically, Mrs. Morrison points to

Hartford's answers to two Requests to Admit. *Id.,* Exhibits. B and C.[6]  However, she

---

[6] Both Requests asked Hartford to admit that the signature on the GIA is not the genuine
signature of Donna B. Morrison. Hartford denied both Requests, stating "[t]he name
signed is that of Donna B. Morrison; and the signature is both witnessed and notarized.

does not explain how Hartford's alleged lack of good faith in discovery justifies her

failure to disclose her expert witness, nor does she explain why it would preclude

Hartford's ability to argue that the expert report is inadmissible.  Alleging a discovery

violation is not a justification for failing to disclose an expert witness. *Vaughn*, at *5.

Furthermore, Mrs. Morrison failed to file a Motion Regarding the Sufficiency of an

Answer or Objection under Fed. R. Civ. P. 36(a)(6), the proper course of action to

address such a discovery violation.

For all of these reasons, the Court finds that Todd Welch may not be called as an

expert witness in this case.  Accordingly, the Court will not consider Mr. Welch's  expert

report.

### D.    ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT DONNA MORRISON

Despite the exclusion of Todd Welch's expert witness report, the record shows

that genuine issues of material fact exist regarding the validity of the Signature of "Donna

B. Morrison" on the GIA.

First, the record shows that Mrs. Morrison has consistently and unequivocally

denied that she signed the GIA. [*See* e.*g.*, Defendant's Answer to Plaintiff's Complaint;

Defendant's Motion for Summary Judgment; Defendant's Response to Plaintiff's Motion

for Summary Judgment.  S*ee also* the transcript of Mrs. Morrison's deposition, Plaintiff's

Response Brief Ex. 2, pp. 12-13.]  Such a consistent and unequivocal denial may on its

---

Hartford lacks knowledge and information sufficient to determine whether the witnesses
and notary public falsified their attestation."

own suffice to create a genuine issue of material fact. In *Ameriquest Mortgage Co. v. Savalle*, No. 07-14574, 2009 U.S. Dist. LEXIS 69080 (E.D. Mich. Nov. 20, 2009) (unpublished), the defendant denied the validity of her signature on a notarized mortgage. The Court stated that the signature was entitled to a notarial presumption of validity, but nonetheless held that the defendant's "unequivocal testimony" denying having signed the document "create[d] a factual issue for the jury." *Id.* at 14; *accord Dodson v. Imperial Motors, Inc.,* 295 F. 2d 609, 615-16 (6th Cir. 1961) (applying Michigan law).

As did the plaintiff in the *Ameriquest* case, Plaintiff here also argues that, because it was notarized, the Signature of "Donna B. Morrison" on the GIA is entitled to a presumption of validity. Under Michigan law, "the certificate of a notary public of official acts performed in the capacity of a notary public, under the seal of office, is presumptive evidence of the facts contained in the certificate[,]" except that a "court may invalidate any notarial act not performed in compliance with this act." M.C.L. § 55.307.

Section 55.285(5) of the Notary Public Act states that "[T]he notary public shall require that the person sign the record being verified, witnessed, or attested *in the presence of the notary public*." M.C.L. § 22.285(5) (emphasis added). Subsection 2 of the Act requires the notary to "print, type, stamp or otherwise imprint [. . .] [t]he date the notarial act was performed." M.C.L. § 55.287(2).

In this case, the notarization of Sheryl Brown states that "Donna B. Morrison" signed the GIA in Wayne County, Michigan, in the notary's presence, on February 20, 2010. Mrs. Morrison, however, has produced evidence disputing the notary's

14

certification. She has produced a credit card statement indicating that Mrs. Morrison was in Las Vegas on February 20, 2010, i.e., the date of notarization listed on the GIA. [See Defendant's Reply Brief, Ex. A.] Hartford does not dispute the genuineness of this evidence.  That Mrs. Morrison was in Las Vegas on the date listed on the notarization indicates that Sheryl Brown failed to comply with either Section 55.285(5) or Section 55.287(2). Therefore, the notarial act should be invalidated.[7]

However, while the record may show that Mrs. Morrison did not sign the GIA on the listed date of notarization, this does not foreclose the possibility that the Signature is genuine.  Evidence of record shows that Sheryl Brown and other notaries working for ABC often notarized documents with false dates.

Lori Adkins, another notary employed by ABC, testified that there were instances when she notarized documents signed by Mr. and Mrs. Morrison out of her presence, and dated her notarization without knowing whether the dates she affixed were the dates on which the documents were actually signed. *See* Adkins Dep., p. 24.  Given this evidence, a reasonable jury could find that the GIA was actually signed on a date other than February 20, 2010, and, therefore, Mrs. Morrison's credit card statement indicating that she was in Las Vegas on that date does not conclusively prove that she did not sign the

---

[7] Invalidating a notarial act does not invalidate the underlying document, however. It merely negates the presumption of validity created by MCL § 55.307(1). *See McConnell v. McConnell*, 2012 WL 5857297 (Mich. Ct. App. Oct. 30, 2012) (unpublished) ("[T]he notary public's failure to properly acknowledge and verify the deed signatures means that no presumption arises with regard to the accuracy of any facts set forth in the deed, but it does not mean the deed itself is invalid.")

GIA. While it may prove that Sheryl Brown's notarial act should be invalidated, the issue of the validity of the Signature cannot be foreclosed in favor of Mrs. Morrison.

With respect to Mrs. Morrison's other evidence -- i.e., the samples of her authenticated signature endorsing two checks and the signature from her driver's license -- though these samples appear to be different from the Signature on the GIA,[8] whether or not all of the signatures belong to Mrs. Morrison is a factual question for the jury. *See e.g.*, *U.S. v. Saadey*, 393 F. 3d 669, 679 (6th Cir. 2005) ("Under FED. R. EVID. 901(b)(3), a lay person can identify and compare signatures."); *Turner v. U.S.*, 229 F. 2d 944, 946 (6th Cir. 1956) ("[T]he jury had the opportunity of comparing the signature [. . . ] for insurance with the signature [. . .] for change of beneficiary.").[9]

Because the trier of fact can determine the validity of the Signature by comparing it to Mrs. Morrison's authenticated signatures, and because the jury can find that the date of notarization on the GIA is inaccurate, a reasonable jury could find that the Signature is genuine.

---

[8] There is also a signature on another agreement allegedly belonging to Mrs. Morrison. The jury can also compare this signature to the sample signatures and to the Signature.

[9] The jury also will be permitted to assess the impact of Mr. Morrison's invocation of his Fifth Amendment privilege against self-incrimination in response to deposition questions concerning the authenticity of the signature "Donna B. Morrison" on the GIA and draw an adverse inference from the assertion of the privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558 (1976); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995); *cf.*, *Flagg v. City of Detroit*, 27 F. Supp. 2d 765, 806 (E.D. Mich. 2011).

Hartford also attempts to refute Mrs. Morrison's testimony that she did not sign the GIA by challenging her credibility, arguing that her testimony conflicts with other evidence in the record in several respects, especially concerning statements that she made regarding her lack of involvement with her husbands' companies.  Hartford also argues that Mrs. Morrison has substantial financial incentive to disavow her signature. However, "[i]t is [. . .] inappropriate for a court to make credibility determinations when considering a motion for summary judgment." *FDIC v. Jeff Miller Stables*, 573 F. 3d 289, 295 (6th Cir. 2009) (citation omitted). When the credibility of testimony is at issue, "[s]ummary judgment should not be denied simply because the opposing party asserts that the movant's witnesses are not to be believed[,]" *Dawson v. Dorman*, 12-6163, 2013 WL 2397410 (6th Cir. June 3, 2013) (unpublished) (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F. 3d 1151, 1158 (Fed. Cir. 2004)).   Similarly, whether Mrs. Morrison has a financial motivation to dispute the authenticity of the Signature is a question of fact for the jury to decide.  *See George v. Sonoma Cnty. Sheriff's Dept.*, 732 F. Supp. 2d 922, 938 (N.D. Cal. 2010).

Based upon the foregoing, the Court finds that material issues of fact preclude the entry of summary judgment in favor or against Defendant Donna Morrison.  Accordingly, Defendant's Motion and Hartford's Motion with respect to Donna Morrison will be denied.

## CONCLUSION

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiff Hartford Fire Insurance Company'

Motion for Summary Judgment **[Dkt. # 38]** is GRANTED, in part, and DENIED, in part.

Plaintiff's Motion is GRANTED as to the liability of Defendants ABC Paving Company,

ABC Paving Company, Inc., Michigan Road Maintenance Company, LLC and Thomas

Morrison.  The Motion is DENIED as to Defendant Donna Morrison.

IT IS FURTHER ORDERED that Defendant Donna Morrison's Motion for

Summary Judgment **[Dkt. # 35]** is DENIED.

This case will proceed to trial on the issue of Donna Morrison's liability as well as

on the issue of the amount of Plaintiff's damages.

Dated:  June 26, 2013                        s/Gerald E. Rosen
                                             GERALD E. ROSEN
                                             CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, June 26, 2013, by electronic and/or ordinary mail.

                                             s/Julie Owens
                                             Case Manager, (313) 234-5135

18